IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| FARRAKHAN BEY, #153770 | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. L-05-2862 |
| | : | |
| FRANK C. SIZER, et al. | : | |
| Defendants | : | |

**MEMORANDUM**

This is a 42 U.S.C. § 1983 civil rights action.  The Plaintiff, Farrakhan Bey, is a Maryland Division of Corrections ("DOC") inmate.  In his complaint and supplement, Bey claims that (i) psychology personnel and other prison staff avoid him; (ii) prison personnel wrongfully use notarized documents to "forge his identities;" (iii) he is not receiving compensation for the use of his notary seal; (iv) he was wrongfully placed on administrative segregation or kept on the medical wing following his transfer back to the Jessup Correctional Institution[1] from Patuxent Institution; (v) he has not been afforded periodic administrative review to determine whether continuation of such special housing assignments is necessary; (vi) prison staff keep their identities from him to prevent him from naming specific individuals responsible for these deprivations; and (vii) prison staff should be required to protect his privacy by announcing the arrival of any female employees fifteen minutes before they come into his housing area.

Now pending are the parties' cross-motions to dismiss or for summary judgment.[2]  The motions have been fully briefed, and Bey has been afforded a full opportunity to substantiate his

---

[1] Effective May 3, 2006, the Maryland House of Correction Annex was renamed the Jessup Correctional Institution ("JCI").

[2] Bey's third motion seeking indigency status also is pending.  As he was previously granted leave to file in forma pauperis, the third indigency motion, found at Docket No. 13, will be denied as moot.

claims. No hearing is necessary. In a separate order, the Court will: deny Bey's motion for summary judgment;[3] grant in part and deny in part Defendants' motion for summary judgment; and require Defendants to provide supplemental briefing and exhibits regarding Bey's allegations that he has been wrongfully kept on special housing status and denied administrative review of such status.

The Court shall examine each of Bey's claims under the applicable summary judgment and Eighth and Fourteenth Amendment standards.

**I.       Motion for Summary Judgment**

    **A.       Standard of review**

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. See Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

---

[3] Bey's dispositive motion does not aid in the outcome of this case. The motion reiterates several of the claims raised in the Complaint and Supplement, and references what appears to be portions of a DOC classification document.

### B.    Avoidance by Prison Personnel

Defendants overlook Bey's first allegation that prison personnel avoid him. Nonetheless, with regard to that claim, Bey falls far short of proving a constitutional violation because there is no requirement that prison personnel interact socially with prisoners, except to provide them with constitutionally-mandated necessities.  Moreover, there is no constitutional requirement that prison personnel make their identities known to prisoners.  Bey does not demonstrate that he has suffered any injury as a result of his inability to discern the names of institutional staff.

### C.    Use of Notarized Documents

Defendants do not directly respond to Bey's second claim in which he alleges that prison personnel wrongfully use notarized documents to "forge [Bey's] identities" and fail to compensate him for using his notary seal.  It is difficult to ascertain precisely what Bey is alleging.  Review of Bey's letters to the Warden, his Administrative Remedy Procedure ("ARP") requests, and a copy of a check appended to his motion for summary judgment suggest that Bey believes monies have been wrongfully taken from his prison account and placed in his reserve account[4] or used to satisfy filing fee assessments to the courts as required pursuant to the Prison Litigation Reform Act ("PLRA").

Defendants do not provide a summary of Bey's inmate account statements, precluding a fact-based finding as to whether his accounts have been properly handled.  Such a determination need not be made, however, because the allegations at best amount to a prisoner property claim. Such a claim is not cognizable in a civil rights action if sufficient due process is afforded to a

---

[4]    A reserve account operates as a "savings account," providing Maryland prisoners with at least $25.00 at the time of their release from incarceration.

prisoner by way of an adequate post-deprivation remedy.  See Parratt v. Taylor, 451 U.S. 527, 542-44 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986).  The right to seek damages and injunctive relief to correct any misappropriation of prisoner funds in Maryland courts, which is a remedy available to Bey, constitutes an adequate post-deprivation remedy.[5]  See Juncker v. Tinney, 549 F. Supp. 574, 579 (D. Md. 1982).[6]

### C. Compensation for Notary Services

It is difficult to ascertain the nature of Bey's third claim.  To the extent he is complaining that he has been deprived of an opportunity to earn money while incarcerated by notarizing documents, the claim fails.  Work opportunities for prisoners are matters left to the discretion of prison officials,[7] and a prisoner's inability to earn income as a notary while incarcerated does not rise to the level of cruel and unusual punishment prohibited by the Eighth Amendment.

### D. Continuation on Administrative Segregation Status Without Periodic Review and Mental Health Treatment

Liberal construction of the Complaint and supplement requires the Court to determine whether Bey has been "ignored" by psychology staff and DOC personnel with regard to ongoing mental health treatment and classification decisions concerning his alleged continued long-term confinement on administrative segregation or the medical ward.  Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain

---

[5]  Bey may available himself of remedies under the Maryland Tort Claims Act, Md. Code Ann., State Government article, § 12-101 et seq., and through the Inmate Grievance Office ("IGO").

[6]  Although Juncker dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post-deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property, given Juncker's reliance on Parratt in dismissing the plaintiff's due process claim.

[7]  See Altizer v. Paderick, 569 F.2d 812, 815 (4th Cir. 1978).

proscribed by the Eighth Amendment.[8]  Furthermore, it has long been recognized that within the context of medical care, prisoners are entitled to necessary, albeit limited, psychiatric treatment under certain circumstances.[9]  Additionally, continued long-term segregation, if imposing an atypical and significant hardship in the context of ordinary prison life, may constitute violation of a prisoner's liberty interest.[10]

Defendants fail to provide specific factual information or affidavits to aid the Court in examining these Eighth Amendment and due process claims, instead relying on: (i) an April 11, 2006, Memorandum from Litigation Coordinator Mike Miller to defense counsel intended as a summary of Bey's mental health problems; (ii) a June 5, 2003, e-mail from Dr. Hank Musk indicating that Bey is chronically mentally ill, refuses mental health treatment, has spent a great deal of time at the mental health unit, and per Warden Peguese is not to be placed in the general prison population; (iii) ARP requests filed by Bey apparently intended to show the rambling, disjointed nature of his complaints about prison life; (iv) a Psychological Intervention referral form intended to show that Bey suffers from delusions and has a history of aggressive and hostile behavior; (v) Bey's letters to various Wardens; (vi) a June 13, 2000 discharge summary from the Correctional Mental Health Center at Jessup, summarizing five years of treatment there; and (vii) documents concerning Bey's April 11, 2006, administrative segregation assignment review.

These documents do not answer several pertinent questions concerning Bey's medical

---

[8]  See Estelle v. Gamble, 429 U.S. 97 (1976).

[9]  See Bowring v. Godwin, 551 F.2d 44 (4th Cir. 1977).

[10]  See Sandin v. Conner, 515 U.S. 472 (1995).

condition and his treatment.  Within thirty (30) days of the date of this Order, the government shall submit additional briefing that addresses the following questions: (1) the length of time Bey has been in special housing; (2) whether Bey has received regularly-scheduled classification reviews to assess whether his present housing status (long-term segregation) is appropriate; (3) what role, if any, psychology staff played in determining his housing status and in assessing the duration of such placement; and (4) what steps, if any, staff have taken to improve Bey's mental health in the hope of returning him to general population.

### E.   Claim for Injunctive Relief to Protect Privacy

Bey seeks injunctive relief whereby DOC officials would inform him fifteen minutes in advance whenever female staff were coming into an area where he might be present.  Injunctive relief may be granted only if the party seeking it can demonstrate:  (i) the likelihood he will be irreparably harmed if the injunction is denied; (ii) the likelihood that the other party will suffer no harm if the requested relief is granted; (iii) the likelihood that the movant will succeed on the merits of the claim; and (iv) the public interest will be served if injunctive relief is granted.[11]

Prisoners necessarily surrender many aspects of the right to privacy.  Nonetheless, involuntary exposure of their bodies to members of the opposite sex, when not reasonably necessary, may amount to a violation of constitutional magnitude.[12]  Bey has failed to state that his privacy rights actually have been violated by the presence of female prison staff.  Instead, he appears concerned that unless he is given advance notice of the impending arrival of female staff, such harm might occur.  This concern is speculative at best.  Bey has failed to show

---

[11]   See Blackwelder Furniture Co. v. Selig Manufacturing Co., 550 F.2d 189, 195-96 (4th Cir. 1977); see also Ciena Corp. v. Jarrard, 203 F.3d 312, 322-23 (4th Cir. 2000).

[12]   See Lee v. Downs, 641 F.2d 1117 (4th Cir. 1981).

irreparable harm and has failed to establish that he is entitled to prevail on the merits with regard to his privacy rights claim by showing actual injury.  Defendants are entitled to summary judgment as to Bey's claim seeking prospective injunctive relief in anticipation of privacy violations by female prison staff**.**

## II.     Conclusion

For the foregoing reasons, the Court will, by separate Order:

(i)     DENY Bey's third Motion for Leave to File In Forma Pauperis;

(ii)    DENY Bey's Motion for Summary Judgment;

(iii)   DENY Defendants' Motion for Summary Judgment as to Bey's claims of denial of mental health treatment and continued assignment to segregation without administrative review;

(iv)    DIRECT Defendants to file additional briefing within thirty (30) days of the date of this Order;

(v)     GRANT Defendants' Motion for Summary Judgment on all other claims; and

(vi)    DIRECT the Clerk to Mail a copy of the Memorandum and Order to Bey and PROVIDE same to counsel of record.

Dated this 18th day of July, 2006.

                                                             ____/s/_____
                                                             Benson Everett Legg
                                                             Chief Judge