## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

FARRAKHAN BEY, #153770          :

          Plaintiff,          :

          :

v.          :          Civil Action No. L-05-2862

          :

FRANK C. SIZER, et al.          :

          Defendants.          :

### MEMORANDUM

This 42 U.S.C. § 1983 civil rights action was filed by Farrakhan Bey ("Bey"), a Maryland Division of Corrections ("DOC") inmate who is serving a life sentence.[1] Bey claims that:

(i)      psychology personnel and other prison staff avoid him,

(ii)      prison personnel wrongfully use notarized documents to "forge his identities,"

(iii)      he is not receiving compensation for the use of his notary seal,

(iv)      he was wrongfully placed on administrative segregation or kept on the medical wing following his transfer back to the Jessup Correctional Institution ("JCI")[2] from the Patuxent Institution,

(v)      he has not been afforded periodic administrative review to determine whether continuation of such special housing assignments is necessary,

(vi)      prison staff keep their identities from him to prevent him from naming specific individuals responsible for these deprivations, and

(vii)      prison staff should be required to protect his privacy by announcing the arrival of

---

[1]    Bey, now fifty-eight years old, is serving a Maryland sentence of life plus 135 years, which began on March 4, 1977, following convictions for first degree murder, assault with intent to murder, robbery, and a handgun violation.  Additionally, he is serving concurrent sentences totaling an additional 100 years following separate convictions on kidnaping, robbery, and handgun charges, imposed on October 28, 1980.  Bey was convicted of other crimes in the 1960s and 1970s in North Carolina.  He escaped incarceration three times while incarcerated there.

[2]    Effective May 3, 2006, the Maryland House of Correction Annex ("MHC-A") was renamed the Jessup Correctional Institution ("JCI").

any female employees fifteen minutes before they come into his housing area.

On July 18, 2006, the Court granted defendants' motion for summary judgment as to all claims, except for claims IV and V. Now pending is defendants' second motion for summary judgment on the two remaining claims.   The issues have been fully briefed and no oral argument is necessary.  The Court is satisfied that Bey has been provided with adequate mental health treatment and that his long-term placement on medical administrative segregation did not constitute a violation of due process.  Accordingly, the Court will, by separate order, GRANT defendants' motion for summary judgment.[3]

## I.      Standard of Review

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial).  Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party.  See Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

## II.     Analysis

### A.      Mental Health Treatment

---

[3]     Also pending is Bey's fourth motion seeking indigency status.  As he was previously granted leave to file in forma pauperis, the fourth indigency motion, found at Docket No. 21, will be denied as moot.

Bey claims that psychology staff and other DOC personnel have ignored his mental health problems in violation of the Eighth Amendment.   Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.[4]   Prisoners are entitled to necessary, albeit limited, psychiatric treatment under certain circumstances.[5]   The Constitution may entitle a prisoner to psychiatric or psychological treatment if a "physician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable medical certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or denial of care would be substantial."   Bowring v. Godwin, 551 F.2d 44, 47 (4th Cir. 1977).   The right is limited to care that can be provided on a reasonable cost and time basis.   See id. at 48.

The evidence here clearly demonstrates that Bey has received an appropriate level of psychiatric care during his many years of incarceration in Maryland.   During his first twenty years of incarceration, he was twice admitted to the Correctional Mental Health Center ("CMHC") in Jessup, first from August 1993 until October 1993, and then from May 1995 until June 2000.   Docket No. 18, Attachment 5B.

He was admitted to the CMHC for a third time on October 30, 2001.   Although initially assigned to the Acute Mental Health Unit, he was transferred to the Sub-Acute Unit on

---

[4]     See Estelle v. Gamble, 429 U.S. 97 (1976).

[5]     See Bowring v. Godwin, 551 F.2d 44 (4th Cir. 1977).

November 6, 2001 due to non-compliance with treatment and refusal to take medications.[6]

While there, Bey was alert and oriented, yet he exhibited "fixed delusions," including a belief

that he suffered from a "neuro-attachment disorder" wherein "people . . . attach themselves to me

and defecate through me." Id., Attachment 2B.  He spit and flushed the toilet approximately

every 30 seconds to keep from swallowing these substances which would make him sick.  See

id., Attachment 3B.  He also yelled at unseen individuals in his cell.  See id., Attachment 4B.

As noted by the psychologists, "although he is clearly mentally ill, he has refused treatment in

any and all forms for the last 27 years," a situation "highly unlikely to change."  Id., Attachment

5B.  At the time of his discharge on November 12, 2002, CMHC psychology personnel opined

that despite ongoing mental illness, Bey could function in a general population setting.[7]  See id.,

Attachment 6B.

Bey's return to general population at the JCI  following his discharge from the CMHC

was short-lived.  On June 8, 2003, he was assigned to the JCI's administrative segregation unit

due to his psychiatric problems.[8]  As noted by Dr. Hank Musk, a psychologist, Bey was found to

be "chronically mentally ill" and "spent a great deal of time at the mental health unit...[where]

[he] refuses all mental health treatment."  As a result of this noncompliance, "[CMHC] will not

---

[6]      On November 12, 2002, psychologists at the Correctional Mental Heath Center ("CMHC") in Jessup wrote a Discharge Summary outlining Bey's treatment history.  The discharge summary notes that prior to this admission, Bey had received infractions for assault, inciting a disturbance, possession of weapons, fire-setting, sexual misconduct, possession of escape implements, possession of an intoxicant, and possession of currency.  These infractions led to at least two placements at the Maryland Correctional Adjustment Center ("MCAC").  Docket No. 18, Attachment 2B-3B.

[7]      Bey has been found chronically mentally ill, with diagnoses of schizophrenia and paranoid personality disorder, and exhibits adult antisocial behavior.  Docket No. 11, June 13, 2000, Discharge Summary from the Correctional Mental Health Center, at 5.

[8]      Docket No. 18, Attachment 6A.

permanently house him there."  Dr. Musk further noted that "Warden Peguese does not want [Bey] in general population for very good reasons."[9]

In 2005 and 2006, Dr. Musk suggested on several occasions that Bey might be ready for assignment to general population.  Docket No. 18, Attachment 7B-17B.  Bey was removed from medical administrative segregation and placed on "regular" administrative segregation in April, 2006.  Id., Attachment 4A-5A.

Bey's mental illness has not been ignored.  He has received care, and he is sufficiently sane to request additional treatment.  He has, however, refused to take the psychotropic medications that might improve his condition.  Accordingly, there has been no constitutional violation.  See  Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Bowring, 551 F.2d at  47.

**B.   Continuation on Administrative Segregation Status Without Periodic Review**

Bey argues that defendants violated his constitutional rights by failing to conduct periodic reviews of his placement on segregation.[10]   Segregation is not per se cruel and unusual punishment.  In re Five Percenters, 174 F. 3d 464, 471-73 (4th Cir. 1999);  Allgood v. Morris, 724 F.2d 1098, 1101 (4th Cir. 1984) (segregated protective custody); Ross v. Reed, 719 F.2d 689, 697 (4th Cir. 1983) (administrative segregation).  Long-term segregation, however, may constitute a violation of a prisoner's liberty interest if it imposes an atypical and significant hardship in the context of ordinary prison life.  See Sandin v. Conner, 515 U.S. 472 (1995).

---

[9]   Docket No. 11, Attachment, June 5, 2003, Memorandum from Dr. Hank Musk.

[10]   Specifically, Bey contends that defendants were required to provide such review following his November 12, 2002, discharge from the CMHC. Docket 20 at 2.  He also complains that since his transfer from medical administrative segregation at the JCI to administrative segregation at the Maryland House of Correction ("MHC") he has been housed in a cold building.   Id., at 1. To the extent that Bey is complaining about a condition of confinement at this prison, he may pursue such a claim in this Court after completing administrative review by filing a new civil rights action.

Maryland prison officials have long guarded against the violation of this liberty interest, as evidenced by regulations requiring periodic classification review for prisoners on segregation.

The record demonstrates that Bey was removed from medical administrative segregation and placed on "regular" administrative segregation status on April 11, 2006.  Since then, he has received monthly administrative reviews.[11]   Thus, he is not currently being deprived of the right to such review.[12]

It appears, however, that classification personnel reviewed Bey's status only once between June 8, 2003, when Bey was placed on medical administrative segregation, and April 11, 2006, when he was placed on "regular" status.[13]  The Court need not address this potential violation because Bey failed to exhaust available administrative remedies.  The Prison Litigation Reform Act ("PLRA") requires that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

---

[11]   Bey states that as of September 6, 2006, the date on which he filed his opposition motion, his last review had been held on August 15, 2006.

[12]   Courts owe "substantial deference to the professional judgment of prison administrators."  Overton v. Bazzetta, 539 U.S. 126, 132 (2003); see also Beard, Secretary, Pennsylvania Department of Corrections v.  Banks, 126 S.Ct. 2572, 2577-78 (2006).  It is not the province of this Court to determine whether Defendants' decision to move Bey to administrative segregation with the goal of placement in general population is proper; instead, the Court looks to whether Bey is afforded sufficient due process with regard to these classification decisions.

[13]   The review occurred in March of 2003, after Bey  received an infraction for refusing to provide a urine specimen for drug screening.  He served a period of ninety days' confinement on administrative segregation as punishment for the infraction and thereafter returned to medical administrative segregation   Docket No. 18 at 7A and  8B.

Defendants claim that review of placement on medical administrative segregation is not within the purview of DOC classification staff, but rather is the responsibility of the prison's health care professionals.  They also claim they are entitled to qualified immunity because they have not violated any clearly established constitutional right of which a reasonable public official should have known.  See Wilson v. Layne, 526 U.S. 603 (1999).

-6-

exhausted."[14]   This provision plainly extends to Bey's allegations.  He has not exhausted the

claims at issue,[15] nor has he shown that prison officials frustrated his attempts to initiate or

complete administrative exhaustion.[16]   Accordingly, defendants are entitled to summary

judgment.

**III.    Conclusion**

For the foregoing reasons, the Court will, by separate Order:

(i)      GRANT defendants' Motion for Summary Judgment (Docket No. 18),

(ii)     DENY Bey's motion to proceed in forma pauperis as MOOT (Docket No. 21),
         and

(iii)    DIRECT the Clerk to CLOSE the case and MAIL a copy of the Memorandum and
         Order to Bey.


Dated this 20th day of February, 2007.



                                                    /s/
                                                    Benson Everett Legg
                                                    Chief Judge



_____

[14]      42 U.S.C. § 1997e(a).  The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

[15]      In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure ("ARP") process provided by the DOC to its prisoners.  If this request is denied, a prisoner has ten calendar days to file an appeal with the Commission of Correction.  If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office.  See Md. Code Ann. Corr. Serv. §§ 10-206, 10-210; Md. Regs. Code Title 12 § 07.01.03.  The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.  See Chase v. Peay, 286 F.Supp.2d 523 (D.Md. 2003).

[16]      Cf. Taylor v. Barnett, 105 F.Supp. 483, 486 (E.D. Va. 2000).